UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OK Y. PARK, | No. 2:14-cv-2587-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disabled widow's benefits under the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from March 19, 2008, plaintiff's alleged disability onset date, through June 4, 2014, the date of the final administrative decision. (ECF No. 10.)  The Commissioner subsequently filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 13.)  No optional reply brief was filed by plaintiff.

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 5, 7.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on April 15, 1956, has a high school education obtained in Korea, is literate in simple English, and previously worked primarily as a nut sorter.[2]  (Administrative Transcript ("AT") 83, 110-11, 334-36.)  In September 2010, plaintiff applied for benefits, alleging that her disability began on March 19, 2008, and that she was disabled primarily due to depression and lower back problems.  (AT 110-11, 300, 304, 335.)  After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 31, 2012, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 53-57.)  On July 27, 2012, the ALJ found plaintiff not disabled, but subsequently, on November 19, 2013, the Appeals Council remanded the case to the ALJ for further proceedings.  (AT 43-44, 156-65.)  Thereafter, the ALJ conducted a supplemental hearing on May 13, 2014, at which plaintiff, represented by an attorney, and a VE testified.  (AT 58-87.)

In a decision dated June 4, 2014, the ALJ determined that plaintiff had not been disabled, as defined in the Act, from March 19, 2008, plaintiff's alleged disability onset date, through the date of the ALJ's decision.  (AT 18-28.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for further review on September 9, 2014.  (AT 1-3.)  Thereafter, plaintiff filed this action in federal district court on November 5, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly evaluated the mental health opinion evidence; (2) whether the ALJ improperly rejected the opinion of

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

plaintiff's treating osteopathic physician, Dr. Jennifer Choy, regarding plaintiff's physical limitations; and (3) whether the ALJ improperly discounted plaintiff's own testimony concerning her symptoms and functional limitations.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

   A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to disabled widow's insurance benefits pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ

---

[3] Under the Act, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the

noted that plaintiff met the non-disability requirements for disabled widow's benefits, and that the prescribed period for such benefits ends on March 31, 2016. (AT 20.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since March 19, 2008, plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine manifested by chronic back pain, depression, anxiety, and a panic disorder. (AT 21.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), with the ability to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; to stand and walk for 6 hours in an 8-hour day with normal breaks; and to sit for 8 hours in an 8-hour day with normal breaks. The claimant is literate in simple English. The claimant is able to stoop, crouch, crawl and kneel frequently, but she is unable to climb ladders, ropes or scaffolds. The claimant has no limitations in receiving, understanding and carrying out simple job instructions, and she is limited to occasional detailed job instructions and no complex job instructions. In addition, the claimant can frequently interact with the general public, co-workers and supervisors. The claimant is also capable of adjusting to simple changes in the workplace and is able to make simple workplace judgments.

---

claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

(AT 22.)  At step four, the ALJ found, based on plaintiff's RFC and the VE's testimony, that plaintiff was capable of performing her past relevant work as a nut sorter.  (AT 27-28.)  Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 19, 2008, plaintiff's alleged disability onset date, through June 4, 2014, the date of the ALJ's decision.  (AT 28.)

>   B. Plaintiff's Substantive Challenges to the Commissioner's Determinations
>
>   *Whether the ALJ improperly evaluated the mental health opinion evidence*

Plaintiff first argues that the ALJ erred by not adopting the mild to moderate mental limitations assessed by consultative examining psychologist Dr. Medoff, state agency psychiatrist Dr. Funkenstein, and state agency psychologist Dr. Goldberg.  (AT 92-96, 105-07, 118-20, 129-31, 485-90.)

Even assuming, without deciding, that the ALJ erred by failing to incorporate such mental limitations into the RFC, the error was harmless, because the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony.  Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).  In Hoopai, a medical source determined that the claimant was moderately limited in "his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  Id.  After the ALJ utilized the grids at step five to determine that the claimant was not disabled, plaintiff contended on appeal that the ALJ was required to seek vocational expert testimony regarding the limitations assessed.  Id. at 1075.  The Ninth Circuit rejected that argument, holding that those moderate limitations were not sufficiently severe to prohibit the ALJ from relying on the grids without the assistance of a vocational expert.  Id. at 1077.

Furthermore, the court notes that Drs. Funkenstein and Goldberg specifically found that plaintiff was capable of performing non-public simple repetitive tasks and "simple unskilled work in settings with reduced social demands," respectively.  (AT 92, 120.)  Those assessments are

1   consistent with plaintiff's past relevant work as a nut sorter, which involves virtually no
2   interaction with the general public; limited social interaction with others, apart from taking simple
3   instructions; and Level 1 reasoning, math, and language skills.  See DICOT 529.687-186 (Sorter,
4   Agricultural Produce) ("Apply commonsense understanding to carry out simple one- or two-step
5   instructions.  Deal with standardized situations with occasional or no variables in or from these
6   situations encountered on the job.").  In any event, plaintiff herself indicated that she had no
7   problems with following written or spoken instructions, had no problems getting along with
8   others, could shop in stores for groceries and household items, had no problems with authority
9   figures, and handled stress and changes in routine well.  (AT 357, 359-60.)

10        Thus, the mental limitations assessed by Drs. Medoff, Funkenstein, and Goldberg would
11  not plausibly have altered the ALJ's conclusion that plaintiff could mentally perform her past
12  relevant work as a nut sorter.

13        *Whether the ALJ improperly rejected the opinion of plaintiff's treating osteopathic*
14  *physician, Dr. Jennifer Choy, regarding plaintiff's physical limitations*

15        The weight given to medical opinions depends in part on whether they are proffered by
16  treating, examining, or non-examining professionals.  Holohan v. Massanari, 246 F.3d 1195,
17  1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking,
18  a treating physician's opinion carries more weight than an examining physician's opinion, and an
19  examining physician's opinion carries more weight than a non-examining physician's opinion.
20  Holohan, 246 F.3d at 1202.  To evaluate whether an ALJ properly rejected a medical opinion, in
21  addition to considering its source, the court considers whether (1) contradictory opinions are in
22  the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted
23  opinion of a treating or examining medical professional only for "clear and convincing" reasons.
24  Lester, 81 F.3d at 830-31.  In contrast, a contradicted opinion of a treating or examining
25  professional may be rejected for "specific and legitimate" reasons.  Id. at 830.

26        Dr. Choy's May 23, 2014 impairment questionnaire opined, *inter alia*, that plaintiff could
27  sit for less than 1 hour in an 8-hour workday; could stand/walk for less than 1 hour in an 8-hour
28  workday; had to get up 8-10 times during an 8-hour day with extended time for lying down; could

1 never/rarely lift and carry even 0-5 pounds; could never/rarely use her arms for reaching; could
2 only occasionally grasp, turn, and twist objects and use her hands/fingers for fine manipulations;
3 would have to take multiple unscheduled rest breaks of extended duration every hour; and would
4 be absent from work more than three times a month. (AT 705-09.) Dr. Choy's opinion was
5 contradicted by the opinions of the state agency physicians, who reviewed and discussed the
6 record evidence, and opined that plaintiff's physical impairments were non-severe. (AT 92, 116.)
7 As discussed below, the ALJ provided specific and legitimate reasons for rejecting Dr. Choy's
8 severe opinion.

9 As an initial matter, the ALJ justifiably observed that Dr. Choy's opinion is entitled to less
10 weight, because at the time of its issuance in May 2014, Dr. Choy had only been treating plaintiff
11 for a few months since January 2014. (AT 25, 705.) Indeed, the record documents few in-person
12 treatment visits with plaintiff during that time – many of the contacts between plaintiff and Dr.
13 Choy were phone or e-mail messages relayed by plaintiff's son. As such, it is curious that Dr.
14 Choy opined that plaintiff's severe limitations were present since March 19, 2008, plaintiff's
15 alleged disability onset date, even though Dr. Choy did not start treating plaintiff until almost 6
16 years later and, as the ALJ noted, the record does not contain any medical records related to back
17 pain until 2010. (AT 23, 709.)

18 The ALJ also reasonably found that Dr. Choy's extreme limitations were inconsistent with
19 the weight of the medical evidence. (AT 25.)

20 With respect to the imaging studies, a June 2010 x-ray of plaintiff's lumbar spine revealed
21 only mild scoliosis, with an otherwise normal appearance of the lumbosacral spine. (AT 470.) A
22 subsequent December 2012 MRI showed L3-4 and L4-5 mild right neural foraminal stenosis, and
23 no central canal stenosis or focal disc protrusions. (AT 535.) A February 2013 x-ray of
24 plaintiff's lumbar spine revealed mild lumbar degenerative disc disease at L3-4 and L4-5. (AT
25 703.) Thereafter, a February 2014 MRI showed L4-L5 mild central canal stenosis and L3-L4,
26 L4-L5, and L5-S1 mild bilateral neural foraminal narrowing. (AT 585.) Although Dr. Choy in
27 cursory fashion referenced some of the imaging studies in her questionnaire, she failed to provide
28 any rationale as to how the mild findings on the imaging studies are consistent with her severe

assessed limitations.

Furthermore, the ALJ referenced numerous clinical findings by several different treatment providers that undermine Dr. Choy's extreme limitations. On August 14, 2008, plaintiff indicated that she had no physical complaints. (AT 23, 433.) Subsequently, on June 21, 2010, plaintiff was noted to have muscle spasm in her back, but straight leg raise testing was negative. (AT 23, 477.) On August 9, 2010, plaintiff had full lumbar range of motion, a stable gait, and a negative straight leg raise test. (AT 23, 474.) On October 11, 2010, a treatment provider noted that plaintiff's back x-rays were normal except for mild scoliosis, she had a negative straight leg raise test, and she had only had one session of physical therapy, but that plaintiff "wants disability paperwork filled out." (AT 24, 473.) At an October 25, 2010 visit, plaintiff had a positive straight leg raise test on the left, but flexion, extension, squatting, and walking on toes were "OK" with no sensory or motor defects. (AT 24, 514.) Thereafter, on February 2, 2011, a treatment provider noted stiff movement and decreased range of motion at the trunk, but questioned whether it was due to poor effort. (AT 24, 513.) The provider prescribed physical therapy and instructed plaintiff to mobilize. (Id.) At a follow-up March 2, 2011 visit, plaintiff stated that she walked 20 minutes per day, and was then instructed to increase her walking time daily. (AT 24, 512.) Even though, as the ALJ acknowledged, some treatment records from 2012-2013 record findings of back pain, muscle spasms, an antalgic gait, inability to toe and heel walk, positive straight leg raise tests, and reduced lumbar range of motion, (see, e.g., AT 24, 531, 534, 653-57), other records from that period document that plaintiff had a normal gait and station with normal alignment and mobility of the spine. (AT 24, 612, 631, 646, 703.) Notably, on July 16, 2013, plaintiff expressly denied any joint pain or back pain. (AT 646.) Finally, even Dr. Choy herself in January 2014 found that plaintiff had no abnormal sensation, no abnormal reflexes, and no focal neurological findings. (AT 24-25, 545.) Those findings are inconsistent with some of Dr. Choy's conclusions about plaintiff, including, by way of example, her unexplained and unsubstantiated handling and fingering limitations. (AT 25, 708.)

In light of the above, the court concludes that the ALJ properly rejected Dr. Choy's opinion.

*Whether the ALJ improperly discounted plaintiff's own testimony concerning her symptoms and functional limitations*

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

<u>Lingenfelter</u>, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." <u>Valentine v. Comm'r of Soc. Sec. Admin.</u>, 574 F.3d 685, 693 (9th Cir. 2009) (quoting <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." <u>Id.</u> at 959.

////

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations. Indeed, although the state agency physicians found that plaintiff's physical impairments were not severe, the ALJ, after considering and weighing all the record evidence, found that plaintiff was more limited, essentially restricting plaintiff to light work with additional postural and mental limitations. (AT 22, 24.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

The ALJ permissibly relied on the medical and mental health evidence, as properly weighed by the ALJ, to find plaintiff not completely credible. Although lack of medical evidence to fully corroborate the alleged severity of symptoms cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). Even though plaintiff urges a different interpretation of the medical evidence and/or points to certain portions of the medical evidence that may bolster plaintiff's credibility, the court defers, as it must, to the ALJ's rational resolution of any ambiguities and inconsistencies.

The ALJ also reasonably observed that, despite allegations of disabling back pain, plaintiff had received relatively routine and conservative treatment, mostly involving medication and physical therapy, and no evaluation or recommendation for surgery. (AT 23, 27, 68.) See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"). Even if plaintiff had financial limitations, there is no indication that surgery was considered, but deferred in light of financial concerns.

Additionally, although plaintiff testified that she quit her previous job as a nut sorter because she did not want to work with co-workers or talk to anybody, the ALJ rationally concluded that plaintiff's claims of severe social limitations were contradicted by some of her activities and other statements. (AT 26-27, 76.) For example, plaintiff stated that she spent time and talked with her sister daily; had no problem getting along with family, friends, neighbors, and others; had no problems with authority figures; and shopped for groceries or household items in

stores once or twice a week.  (AT 26, 357-60.)

Finally, the ALJ observed that plaintiff was not compliant with recommended mental health treatment.  (AT 25, 27.)  For example, when plaintiff self-discontinued her medication and refused to attend counseling, her treating physician noted that she would not extend plaintiff's time off work longer than one more month due to noncompliance.  (AT 25, 433-35.)  To be sure, as plaintiff posits, a person suffering from mental illness cannot always be faulted for failure to take medications or failure to comply with treatment.  On the other hand, not all persons with mental illness are necessarily incapable of taking their medications and complying with treatment.  Whether or not such failure bears on a claimant's credibility necessarily depends on the facts and circumstances of the particular case.  In this case, there is no indication that plaintiff's mental impairments rendered her so incapacitated as to be unable to comply with treatment and take her medications.  Indeed, plaintiff's own treating physician appeared to hold plaintiff responsible for compliance with recommended treatment, and refused to extend plaintiff's time off work for longer than one more month due to noncompliance.  Therefore, on this record, it was not improper for the ALJ to consider that factor in the credibility analysis.

Accordingly, the court finds that the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's credibility.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 13) is GRANTED.
3. Judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  December 22, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

11